159 So.2d 313 (1963)
Roosevelt ELLIOTT, Plaintiff-Appellee,
v.
INSURANCE COMPANY OF NORTH AMERICA et al., Defendants-Appellants.
No. 10076.
Court of Appeal of Louisiana, Second Circuit.
December 6, 1963.
Rehearing Denied January 9, 1964.
Writ Refused March 16, 1964.
*314 Lunn, Irion, Switzer, Trichel & Johnson, Shreveport, for appellants.
Bodenheimer, Looney & Jones, Nesib Nader, Shreveport, for appellee.
Before GLADNEY, AYRES and BOLIN, JJ.
AYRES, Judge.
In this action plaintiff seeks to recover of his employer and his employer's compensation insurance carrier workmen's compensation at the maximum statutory rate for total and permanent disability. From a judgment in favor of plaintiff, as prayed for, less compensation paid covering a period of 26 weeks, defendants appealed.
The factual issue presented for determination is whether or not plaintiff has borne his burden of proof and established to a legal certainty and by a reasonable preponderance of the evidence that he is suffering from traumatic neurosis as the result of accidental injuries.
The accident out of which this alleged injury arose occurred on August 21, 1961, when plaintiff, a 59-year-old brick-mason helper or assistant, fell approximately 15 feet off a scaffold at the main office and building of the Bossier Bank & Trust Company. Plaintiff was immediately hospitalized under the care and treatment of Dr. C. E. Boyd, a general practitioner and surgeon. Examinations and x-rays disclosed that plaintiff had sustained generalized contusions and abrasions on his left side and *315 a severe sprain and subluxation of his left wrist, with damage to the soft tissues resulting in fibrositis. Plaintiff was released from the hospital on August 30, 1961, but continued as an outpatient of Dr. Boyd and was treated with Microtherm and physiotherapy until February 12, 1962, when he was discharged.
The payment of compensation predicated upon plaintiff's physical disability was discontinued after payments had been made for a period of 26 weeks. This suit followed and, as originally filed on April 2, 1962, was based solely upon alleged physical disabilities. After the filing of defendants' answer on April 26, 1962, no further action was taken until December, 1962, when, by a supplemental petition, plaintiff alleged that, by reason of traumatic neurosis, he was unable to work without pain, and, hence, that he was permanently and totally disabled. A denial that plaintiff was suffering from traumatic neurosis was immediately entered in defendants' answer.
In resolving the issues thus presented there are certain well-established principles by which we must be guided. The first of these is that, in a compensation suit, as is generally true in all other civil actions, a plaintiff must establish his claim to a legal certainty and by a reasonable preponderance of the evidence. Roberts v. M. S. Carroll Co., La.App.2d Cir., 1953, 68 So.2d 689; Green v. A. C. Campbell Construction Co., La.App.2d Cir., 1955, 78 So. 2d 54; Bailey v. Aetna Casualty and Surety Company, La.App.2d Cir., 1957, 94 So.2d 576.
No exception to the aforesaid rule is made where the alleged disability is predicated upon traumatic neurosis. However, in such instances, the court must proceed with utmost caution and exercise extreme care in view of the nebulous characteristics of such a condition. Mouton v. Gulf States Utilities Co., La.App.1st Cir., 1953, 69 So.2d 147; Ladner v. Higgins, Inc., La.App. Orleans, 1954, 71 So.2d 242; Phelps v. Royal Indemnity Company, La.App. Orleans, 1955, 77 So.2d 225; Hicks v. Royal Indemnity Company, La.App. Orleans, 1955, 80 So.2d 553; Miller v. United States Fidelity and Guaranty Co., La.App.2d Cir., 1957, 99 So.2d 511; Phillips v. Underwriters at Lloyd's of London, La.App.1st Cir., 1961, 128 So.2d 318; Litton v. London Guaranty and Accident Company, La.App.2d Cir., 1961, 133 So.2d 858.
While the principle of allowing recovery of compensation upon the basis of traumatic neurosis is now well established, appropriate in giving consideration to such an issue is an observation made by this court in Miller v. United States Fidelity and Guaranty Co. (1957), 99 So.2d 511, 518, wherein it was stated:
"We are fully cognizant of and have striven to take into proper consideration the dangers of abuse that are implicit in the acceptance of mental and nervous disorders and affections as constituting disability within the intent and purpose of our compensation statute. This danger has been voiced numerous times by the courts of this state, and it is accepted as an established principle, that the evidence in cases of this nature should be scrutinized with extreme care and that every precaution should be taken to protect employers and insurers against unjustified claims which lie in the somewhat nebulous realm of mental affections. On the other hand, the contrary danger of denying recovery to a deserving claimant is equally apparent."
In connection with the treatment of plaintiff's physical injuries, he was treated by Dr. G. H. Cassity, a general practitioner, in addition to Dr. Boyd. He was examined by Dr. J. S. Sanders, another general practitioner. Drs. Cassity and Sanders testified on behalf of plaintiff. On behalf of the defendants, plaintiff was examined by Drs. Willis J. Taylor and R. E. King, orthopedists, who, as well as Dr. Boyd, testified on their behalf. On two occasions, Dr. Andrew *316 J. Mullen, a psychiatrist, examined plaintiff. Dr. T. B. Ray, a psychologist, at the direction of Dr. Mullen, conducted certain tests, the results of which were submitted to Dr. Mullen in connection with his appraisal of plaintiff's mental condition. It does not appear appropriate, or even necessary, to dwell upon the testimony of these experts insofar as the same pertains to plaintiff's physical injuries and physical disabilities; for the consensus, as expressed in their predominant testimony, is that plaintiff did not suffer disabling physical injuries after the lapse of 26 weeks following the accident. Neither Drs. Boyd, King, nor Taylor found plaintiff suffering such injuries, nor did they find any objective signs of injury. There was no physical evidence of any kind indicative of disability found by any of the orthopedists or treating physicians. It was, however, conceded by some of the experts that plaintiff, through his fall, underwent experiences which could possibly have produced traumatic neurosis.
It may be pointed out, however, that Dr. Mullen was the only psychiatrist who testified. His specialty is the particular field in which plaintiff's asserted ailment comes. The jurisprudence is replete with pronouncements that the opinions of experts concerning matters coming within their particular specialties are entitled to great weight. Special consideration should therefore be given to Dr. Mullen's testimony in evaluating plaintiff's complaint. Dr. Mullen examined plaintiff on two occasions, each consuming possibly an hour. These examinations consisted of a perfunctory examination, followed by a series of questions and answers. While plaintiff appeared tense and somewhat depressed, his emotional tone was good, showing no emotion; nor did he have delusions or hallucinations. Nor did the doctor find that plaintiff had periods of confusion or changes in his state of consciousness. Nor did the doctor learn of any psychotic episodes of the past. On the second of the examinations, under date of October 30, 1962, the doctor testified that his neurological examination was essentially negative, although plaintiff was, in his opinion, of the type that was prone to develop traumatic neurosis. The doctor's testimony, however, as to whether plaintiff actually suffered traumatic neurosis was guarded, vague, indefinite, and unconvincing, and, in some instances, confused or contradictory. For instance, with reference to plaintiff's ability to work, the doctor conceded an ambiguity in his own testimony and confirmed a report wherein he stated, "I cannot truthfully say he is unable to work."
Plaintiff relies upon the case of Williams v. Bituminous Casualty Corporation, La.App.2d Cir., 1961, 131 So.2d 844, wherein it was held that, through the testimony of one psychiatrist, plaintiff had established he sustained traumatic neurosis and therefore that his disability entitled him to recover workmen's compensation. In the cited case, the pertinent testimony was clear, concise, and convincing. We felt that the testimony met the required test when scrutinized with extreme care and with the precaution so necessary in considering claims which come within the realm of mental affections. As already pointed out, we do not feel that the testimony of Dr. Mullen, in the instant case, meets these tests. The problem here is whether plaintiff has borne the burden of proof incumbent upon him to establish his disability by a reasonable preponderance of the evidence and to that degree of legal certainty as required by law.
The instant case bears remarkable similarity to Mouton v. Gulf States Utilities Co., supra. There, it was held that the testimony of a psychiatrist, predicated upon history narrated by plaintiff in two question-and-answer periods lasting 45 minutes each, did not constitute proof of traumatic neurosis by a clear preponderance of the evidence.
In Phelps v. Royal Indemnity Company, La.App. Orleans, 1955, 77 So.2d 225, it may *317 be observed that, where the medical experts found no evidence of physical injury, dismissal of plaintiff's action predicated upon neurosis was upheld even though two of three psychiatrists testfied that plaintiff was afflicted with such malady.
In Etienne v. Algernon Blair, Inc., La. App. Orleans, 1958, 100 So.2d 533 (writs denied), the testimony of two psychiatrists was considered insufficient to establish disability from neurosis where such diagnoses were predicated solely upon subjective symptoms related by the plaintiff. A similar conclusion, with reference to the testimony of a single psychiatrist who examined plaintiff on one occasion four days prior to trial, was made in the case of Corral v. Crawford Homes, Inc., La.App.1st Cir., 1959, 113 So.2d 820.
In the Williams case, supra, plaintiff, from the very time he was injured, according to Dr. Eddy, was "distraught and was letting his distress carry him away physically." Within two weeks of the accident, plaintiff complained of dizziness, pain over his left scapula, and no improvement in his neck condition. His behavior was characterized as unusual. There was no showing of previous actions to discredit plaintiff.
In the instant case, Dr. Mullen's conclusions were based upon subjective symptoms related by plaintiff in two interviews only six days apart, some 16 months following the accident. In the absence of supporting or corroborating facts or circumstances, the testimony of a single psychiatrist, whose opinion is based upon the acceptance of a claimant's story gained in only two separate interviews not exceeding an hour each, is insufficient to establish to a legal certainty a case of traumatic neurosis. Such testimony fails to meet the test and scrutiny to which we have already referred.
For the reasons assigned, the judgment appealed is annulled, avoided, reversed, and set aside; and it is now Ordered, Adjudged, and Decreed that plaintiff-appellee's demands be, and they are hereby, rejected and his suit dismissed at his cost, including the cost of this appeal.
Reversed and dismissed.