217 So.2d 416 (1968)
Pershing J. VEZINAT
v.
Maurice H. MARIX, Jr., et al.
No. 7512.
Court of Appeal of Louisiana, First Circuit.
December 16, 1968.
*417 Gerard E. Kiefer, of Forrest, Kiefer & Hubbs, Baton Rouge, for appellant.
William A. Norfolk, of Taylor, Porter, Brooks, Fuller & Phillips, Baton Rouge, for appellees.
Before LANDRY, REID and SARTAIN, JJ.
LANDRY, Judge.
In this tort action, plaintiff Pershing J. Vezinat seeks recovery from defendant Maurice H. Marix, Jr. (father of the minor Mary Elizabeth Marix) and Marix' insurer, Aetna Casualty and Surety Company (Aetna), for personal injuries, past and future medical expense, loss of earnings and property damage allegedly resulting from an accident in which plaintiff's vehicle was struck from the rear by a vehicle being driven by one Dumestre whose car was in turn hit from behind by an automobile belonging to Marix and being driven by his aforenamed minor daughter.
By coincidence, Aetna is also the compensation insurer of plaintiff's employer, Strasenburgh Laboratories, a division of Wallace & Tiernan, Inc. of Rochester, New York. In said capacity, Aetna has intervened herein praying for recovery of the sum of $851.38 paid plaintiff as medical expense due under our workmen's compensation law.
The trial court's initial judgment was in favor of plaintiff in the sum of $3,500.00 for personal injuries and $510.00 for additional medical expense or an aggregate of $4,010.00. The decree, however, failed to mention Aetna's reconventional demand. On Aetna's application for new trial, the case was reopened with consent of all counsel and the lower court then amended its judgment to award Aetna the $851.38 sought as plaintiff in reconvention but also increased the judgment in plaintiff's favor from $4,010.00 to $4,861.38. Plaintiff has appealed contending (1) the award for personal injuries is wholly inadequate and should be substantially increased because the trial court failed to consider the accident produced a traumatic neurosis in addition to plaintiff's physical disabilities, and (2) the trial court improperly disallowed plaintiff's claims for $1,470.00 lost bonuses, $180.00 for future psychiatric treatment and $106.00 property damages. As defendants in the main demand, Aetna and Marix have appealed contending the award for personal injuries is excessive and should be reduced. Said defendants also maintain the trial court erroneously increased the judgment by the same amount awarded Aetna on its reconventional demand and that said sum of $851.38 should be deducted from any amount awarded plaintiff in the main demand. As plaintiff in reconvention, Aetna has neither appealed nor answered the appeal of principal plaintiff.
The pivotal issue on this appeal is whether plaintiff has suffered a traumatic neurosis with an accompanying depressive reaction as a result of the accident. The affirmative of the question is, of course, strenuously urged by plaintiff. Understandably, *418 the negative is contended by defendants with equal vigor.
The accident occurred at approximately 9:30 A.M., June 16, 1966. Plaintiff, then 44 years of age, was retired from the United States Naval Hospital Corp, and had been employed by Stransenburgh Laboratories for approximately 8 years as a drug salesman or "detail man". At the time of the collision, plaintiff was in the course of his said employment in that he was en route to call upon a physician. Plaintiff's vehicle was stopped at an intersection when struck.
It is clear beyond doubt that the blow received by plaintiff's vehicle was extremely light. It suffices to relate Miss Marix testified in effect that upon observing the tail lights of the preceding Dumestre vehicle flash on, she immediately applied her brakes. She further stated her car did not stop but skidded into the rear of the car ahead with very little force. She also stated the resulting damage to her car was merely a dent in her bumper the approximate size of a half-dollar. The investigating officer estimated the damage to the rear of plaintiff's car at $25.00. Plaintiff testified the rear bumper of his car was pushed forward so that it was touching the trunk but that the trunk was not damaged. Plaintiff also stated an automobile dealer estimated the damage at $106.00.
Plaintiff testified he felt no pain immediately following the accident but approximately one and one-half hours later began feeling pain in his neck and consulted Dr. Delmas G. Hutchinson, a general practitioner. In essence plaintiff stated he was perfectly well before the accident notwithstanding he had experienced a similar accident about one year previous. He also stated he began having headaches and later pain in his low back and legs. In addition, plaintiff testified that notwithstanding considerable medication prescribed by Dr. Hutchinson, plaintiff grew worse. He ultimately developed numbness in the soles of his feet and in his right thumb. He also stated he became moody, depressed and experienced horrible nightmares which he could not describe except to state they left him depressed and dejected. According to plaintiff, he was unable to work for one month following the accident and thereafter could work only part time. Plaintiff further stated that in 1964 and 1965, he earned bonuses in addition to his fixed monthly salary of $600.00 but had merited no bonus in 1966 or 1967 because of his inability to work full time. He also testified his employer had charged his account the sum of $106.00, representing damages to the rented automobile furnished by the employer and involved in the accident.
Dr. Hutchinson testified that upon examination plaintiff complained of pain in the posterior neck. Plaintiff exhibited no bruises, abrasions, contusions or other evidence of physical injury. Dr. Hutchinson noted some limitation of neck motion and also some muscle spasm. On June 21, 1966, plaintiff returned stating he felt no better and also complaining of pain in the low back and calf of his left leg. X-rays taken on this occasion showed no evidence of fracture or sprain but did reveal a loss of lordosis of the cervical spine. In the weeks that followed plaintiff returned frequently and was continued on tranquilizers and muscle relaxants because complications such as insomnia, depression, moodiness and withdrawal from normal personal and family relationships seemed to presage emotional disorder. The visits continued with some regularity and the medications were continued without satisfactory results. Eventually, on October 3, 1966, plaintiff was hospitalized for tests and traction. While so institutionalized, plaintiff was examined thoroughly by a Dr. Jackson, an orthopedist, and Dr. Joseph Edelman, a neurosurgeon. After hospitalization plaintiff's pains persisted and on December 1, 1966, use of a neck brace was suggested. On December 19, 1966, Dr. Hutchinson found that plaintiff had not improved. He then suggested that plaintiff seek psychiatric help and also arranged for plaintiff to be seen by Dr. Edelman. On September 25, 1967, Dr. Hutchinson saw plaintiff for *419 the last time. On this occasion the patient was observed to be in good health except for complaints of pain in the neck, back and calf of the left leg.
The testimony of Dr. Jackson is not of record.
Dr. Edelman testified he saw plaintiff in the hospital on October 5, 1966, at Dr. Hutchinson's request. Examination revealed marked restriction of neck motion in all directions and a sensory loss in the sole of the left foot. Dr. Edelman recommended continued traction at this time. On January 4, 1967, plaintiff was examined again and exhibited more complaints in that he stated the calves of his legs ached and his eyesight had deteriorated despite the fact plaintiff had acquired new eyeglasses. Dr. Edelman observed no neurological abnormality whatsoever. Plaintiff's restriction of neck motion was found to be voluntary because Dr. Edelman noted he could move plaintiff's head and neck freely without complaint of pain while plaintiff lay prone on the examination table. Although X-rays disclosed a loss of cervical spine curvature, Dr. Edelman considered this circumstance a matter of no significance. While plaintiff complained of feeling worse in January than in the previous October, Dr. Edelman found him improved in that plaintiff's range of neck motion was much greater. Being unable to associate plaintiff's pain pattern into a known neurological configuration, Dr. Edelman considered plaintiff's difficulty emotional in origin and recommended psychiatric assistance.
Dr. Alvin Knight Lavender, Psychiatrist, has seen plaintiff with at least monthly regularity since January 31, 1967. Plaintiff related a history of having been injured in the accident of June 16, 1966, and having undergone continued treatment by Dr. Hutchinson during which plaintiff was administered daily dosages of drugs. The narration reflected constant neck, low back and leg pain indicative of bizarre patterns for which no medical explanation was forthcoming. Plaintiff also related experiencing periods of depression, withdrawal and frequent nightmares, the precise nature of which plaintiff could not recall. Plaintiff would appear alternately better and worse and was continued on heavy medication consisting primarily of muscle relaxants and tranquilizers sometimes amounting to 14 dosages daily depending upon plaintiff's condition. In Dr. Lavender's opinion, treatment should be extended to include monthly visits for approximately one year following trial during which plaintiff would be continued indefinitely on medication. It was also Dr. Lavender's opinion that plaintiff was afflicted with a traumatic neurosis attributable to the accident in question.
Mrs. Lena Vezinat, plaintiff's wife, testified in substance that prior to the accident her husband was a normal individual, active in business and social affairs and possessed of a genial personality. He enjoyed his family and home life, played with his children, did his own yard work, enjoyed swimming and danced and participated in other social affairs. Since the mishap, plaintiff's personality has changed completely in that he has been moody, depressed, nervous, withdrawn and inactive.
Our research discloses that the concept of recovery of damages for traumatic or conversion neurosis has had its most frequent application in the field of workmen's compensation cases. See for example, Davenport v. Kaiser Aluminum & Chemical Corp., La.App., 146 So.2d 834; Elliott v. Insurance Company of North America, La.App., 159 So.2d 313, and authorities therein cited. Nevertheless recovery in tort of damages for traumatic or conversion neurosis resulting from wrongfully inflicted injuries, is likewise recognized. Humphries v. Delta Fire and Casualty Company, La.App., 116 So.2d 130; Faslund v. Kendrick, La.App., 169 So.2d 276.
The rule which has evolved in compensation cases imposes upon claimant the burden of establishing a causal connection between the injury producing accident and the alleged neurosis by a preponderance of evidence. Notwithstanding the liberal construction *420 accorded the provisions of the workmen's compensation statute, see Danielsen v. Security Van Lines, Inc., 245 La. 450, 158 So.2d 609 (1963), nevertheless the jurisprudence requires strict compliance with the burden of proof rule because of the nebulous nature of claims for damages predicated upon traumatic or conversion neurosis. In the Elliott case, supra, the rule is stated thusly:
"While the principle of allowing recovery of compensation upon the basis of traumatic neurosis is not well established, appropriate in giving consideration to such an issue is an observation made by this court in Miller v. United States Fidelity and Guaranty Co. (1957), 99 So.2d 511, 518, wherein it was stated:
"We are fully cognizant of and have striven to take into proper consideration the dangers of abuse that are implicit in the acceptance of mental and nervous disorders and affections as constituting disability within the intent and purpose of our compensation statute. This danger has been voiced numerous times by the courts of this state, and it is accepted as an established principle, that the evidence in cases of this nature should be scrutinized with extreme care and that every precaution should be taken to protect employers and insurers against unjustified claims which lie in the somewhat nebulous realm of mental affections. On the other hand, the contrary danger of denying recovery to a deserving claimant is equally apparent.'"
Insofar as we can determine, no tort action involving a claim for damages for neurosis has established a burden of proof criteria other than to apply by implication the general burden of proof rule to the effect a plaintiff is required to establish all of the elements of his claim by a fair preponderance of evidence.
However, in tort actions the courts are not bound by the rules of liberal interpretation with which the legislature has clothed the workemen's compensation statute provisions. We conclude, therefore, that inasmuch as a claim for damages based on alleged neurosis is nebulous, it must therefore be scrutinized with extreme care to protect tort feasors against unjustified and unwarranted claims while at the same time insuring that bona fide claims of such nature will not be denied. We hold, therefore, that in tort actions proof of the existence of conversion neurosis and its causal relation to the injury producing incident sued upon must be presented in clear and convincing fashion. We so hold because in instances of this character the diagnosis of neurosis must perforce be made primarily upon subjective symptoms.
It is fundamental that each case must stand or fall upon its own peculiar facts and circumstances.
While the testimony of Dr. Lavender establishes a neurosis casually related to the accident, Dr. Edelman found no neurological disorder but considered plaintiff's condition purely emotional. Even though Dr. Lavender's conclusion was corroborated to some degree by the testimony of plaintiff and plaintiff's wife, nevertheless the trial court in effect rejected the contention plaintiff's emotional problems resulted entirely from the accident. In so holding, the trial court obviously applied the rule that such claims shall be scrutinized with extreme care and concluded plaintiff had not established this element of damages by clear and convincing proof.
While we appreciate plaintiff's obvious emotional deterioration, it is patent upon the record that Dr. Lavender's diagnosis was predicated solely upon subjective complaints related by plaintiff. In view of Dr. Edelman's testimony, however, we do not find any error in the determination of the trial court herein.
We do find, however, that because plaintiff's objective symptoms (muscle spasm) were found by Dr. Hutchinson to *421 have continued for some six months or more following the accident, the award of $3,500.00 by the trial court does not appear unreasonable and therefore will not be disturbed. Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149.
Likewise, we find the trial court properly rejected plaintiff's claim for alleged lost bonuses. In this regard Mr. William E. Head, Jr., plaintiff's superior, testified in substance that employee bonuses were computed quarterly on the basis of the difference between 12½% of the employee's dollar volume production and the total of all his expenses including salary, and all travel and automobile expenses. If the former exceeded the latter a bonus was paid, if the latter exceeded the former, the employee incurred a deficit which had to be overcome in subsequent quarters before a bonus would be in order. On this basis, Head found plaintiff had not earned a bonus for either the first or second quarters of 1966 although plaintiff had earned bonuses the two years preceding. Since plaintiff had not earned a bonus for the first quarter of the year in which his activities were unaffected by the accident, and neither had he merited one for the second quarter, the greater portion of which antedated his injury, it would be sheer speculation to conclude plaintiff would have overcome the deficits thus incurred and have been entitled to bonuses thereafter.
The record fails to contain satisfactory proof of the alleged loss of $106.00 incurred by plaintiff in damages to the company automobile he was driving at the time of the accident. Plaintiff's testimony is merely to the effect his account was debited by his employer with said amount based on an estimate of repairs made when the automobile was traded and replaced. No such estimate appears of record, however. Neither did plaintiff produce the party who assessed the damages. It is settled law that plaintiff's own estimate of damages is insufficient to support a claim for recovery of a sum spent in repair of a vehicle damaged in an accident. In such cases, plaintiff must prove his claim by the estimate of a person qualified and knowledgeable in the assessment of the value of vehicular repair. Carr v. Williams, La. App., 145 So.2d 611.
Considering our holding plaintiff has failed to establish causal relationship between his conversion neurosis and the accident, it follows he is not entitled to the cost of future medical expense in treatment of said ailment.
However, we find no merit in defendants' contention the trial court erred in increasing plaintiff's award for personal injuries by the sum of $851.38, when the case was reopened with the consent of counsel subsequent to defendants' application for new trial. The reasons for judgment assigned by the lower court indicate intent to award plaintiff the net sum of $3,500.00 for personal injuries and $510.00 for incurred medical expense which the trial court found attributable to the accident. It further appears the matter was reopened merely to correct the oversight of the lower court in failing to grant intervenor judgment against plaintiff for the sum of $851.38, admittedly due by stipulation of the parties. For this reason the trial court increased plaintiff's award by the sum of $851.38 to insure plaintiff's recovery of $3,500.00 for personal injuries and also recovery by intervenor of the sum of $851.38 admittedly due.
Accordingly, it is ordered, adjudged and decreed that the judgment of the trial court be and the same is hereby affirmed; all costs of this appeal to be paid by plaintiff Pershing J. Vezinat.
Affirmed.