SAMUEL, Judge.
This is a suit for personal injuries and related damages sustained in a multiple vehicle collision. Plaintiffs are Preston Tra-han, the owner-driver of one of the vehicles involved, his wife, a passenger in the Trahan car, and Robert F. Six. The claim of the third mentioned plaintiff, Six, was settled before trial and is not before us. Hereinafter we refer to the Trahans as plaintiffs. Defendants are the driver, his employer (the owner) and the liability insurer of a dump truck involved in the collision. The accident occurred on October 22, 1965 on Louisiana Highway 39 in the Parish of St. Bernard. The plaintiff automobile was stopped in a line of traffic. The defendant dump truck failed to stop, struck the vehicle immediately behind the Trahan car and propelled that automobile into the rear of the plaintiff automobile, which in turn was propelled into the vehicle stopped in front of it.
Judgment in the trial court was rendered against the three defendants, in solido, in *513 favor of the plaintiff wife in the sum of $8,000 for pain and suffering and in favor of the plaintiff husband, individually and as head and master of the community, in the sum of $2,584.59. Defendants have appealed. In this court they concede negligence on the part of the defendant driver but contend that the $8,000 award to the wife is excessive and that, insofar as the $2,584.59 award to the husband is concerned, the same should be reduced by: (1) the sum of $375 included therein for maid services; (2) the amount of certain medical bills, in whole or in part; and (3) an apparent $100 error in the trial court’s computation of special damages.
The record contains the testimony of Mr. and Mrs. Trahan, John Rowley and Dominic Palmisano, respectively the sheriff and a deputy sheriff of the Parish of St. Bernard who investigated the accident, and plaintiff’s medical experts, Drs. Robert Mayfield and (by deposition) Emile Ber-tucci, general practitioners, Russell Grun-sten, an orthopedic surgeon, and Coleman Schneider, a radiologist, all of whom were plaintiff witnesses. No witnesses were produced by the defendants.
The only injury sustained by Mr. Trahan in the accident was to his shin bone. There was some bleeding but he sought no medical attention and the injury healed within two weeks. Because of that injury he was unable to help his wife who was trapped in the automobile.
Following the impact Mrs. Trahan was thrown to the floor of the car, rendered unconscious and awoke with her feet under the wheel and her head on the right. She was in severe pain and unable to move. The sheriff and his deputy extricated her from the wreck and took her to St. Bernard Hospital where she was seen by Drs. Mayfield and Bertucci. X-rays were taken which were negative for fracture or dislocation. She was placed in traction and remained in traction until November 1, 1965 when she was released from the hospital. Two to three times a week for a short time following her discharge she returned for outpatient care which consisted of physiotherapy, diathermy, medication to relax the muscles and analgesics. At the end of that time she discontinued professional treatment because of transportation problems and treated herself at home with the use of a heat lamp and heating pad. She continued to use muscle relaxants and medication for pain as prescribed by her doctor. Dr. Mayfield considered her injuries severe. She was unable to do her housework for approximately six months after the accident and a maid was employed during most of that period to perform those duties. Thereafter she did her housework with difficulty and with the assistance of her husband and daughter.
On March 15, 1966 Mrs. Trahan saw Dr. Grunsten with regard to her complaints of soreness in the neck area. He found no objective evidence from x-rays or by examination and was of the opinion she had overcome the influence of her neck injury to the extent that she needed no further treatment. On the preceding day she was seen by Dr. Bertucci who found her asymptomatic other than some tenderness in the neck muscles and gave her a diathermy treatment. She received no further medical care until April 24, 1967 when she returned to Dr. Mayfield with complaints of pain in the back of the neck and shoulders. He found objective evidence of her complaints in swelling left of the cervical spine and to the left of the thoracic spine indicating a spasm of the left paravertebral muscles in that area. Treatment with physiotherapy, analgesics and medication was resumed and continued until June 19, 1967.
We are satisfied from the record «that Mrs. Trahan suffered a severe cervical sprain or strain, an injury which required eleven days hospitalization in cervical traction. She has proven pain and suffering resulting from the injury for a period of approximately six months, pain and suffering which was severe for several weeks following the date of the collision and gradually subsided thereafter.
*514 Mrs. Trahan had no further treatment or complaints until April 24, 1967, a year and a half after the accident and one year after she was seen by Dr. Grunsten. Those complaints in 1967, and the approximate two month period of treatment therefor, clearly are a consideration, and form a part of, the $8,000 award made by the trial judge. But we find she is not entitled to an award for the alleged flareup in 1967.
Out settled jurisprudence is that in a suit for personal injuries the plaintiff bears the burden of proving his claim to a legal certainty by a preponderance of the evidence and this includes the burden of offering sufficient proof that the injuries complained of were caused, precipitated or accelerated by the accident in suit. Carlisle v. Employers Mutuals of Wausau, La. App., 220 So.2d 152, and cases cited therein.
It is true that Mrs. Trahan denies any intervening trauma following the date of the accident and that Dr. Mayfield, who in April, 1967 found objective evidence in the form of spasm in the area of original injury, and Dr. Bertucci were of the opinion that in the absence of a history of any other intervening injury the flareup was caused by the initial accident. But Dr. Grunsten disagreed with the conclusion of Drs. Mayfield and Bertucci; he was of the opinion that a flareup in 1967, approximately one and a half years after the accident and a year after Mrs. Trahan was asymptomatic, in the absence of some damage to the bone or disc structure (and here there was none) and in the absence of other intervening injury, was “very remotely likely.” Dr. Grunsten did not say such an event would be impossible, apparently since medically speaking almost anything is possible, but he did say he had never seen a case in which this happened. In our opinion he testified as positively as can be expected of a medical expert that the so called flareup in 1967 did not result from the injury sustained by Mrs. Trahan in the accident in suit.
Thus we have a situation where all of the medical testimony is offered by the plaintiffs and their medical experts disagree. Under these circumstances, especially in view of the fact that the question presented calls for an opinion in a particular medical field and is not concerned with treatment as such and that the question involves orthopedics in which Dr. Grunsten, and not Drs. Mayfield and Bertucci, is the expert, we are of the opinion that plaintiffs have failed to carry their burden or proving the alleged flareup resulted from the accident. Accordingly, we will reduce Mrs. Trahan’s $8,000 award for pain and suffering to $4,000. See Carlisle v. Employers Mutuals of Wausau, La.App., 220 So.2d 152; Harney v. Kountz, La.App., 218 So.2d 913; Vezinat v. Marix, La.App., 217 So.2d 416.
Appellants’ contention that the award of $375 for maid services should be disallowed is based on the argument that this item of damages was not proved with sufficient legal certainty to justify the award. We disagree with the contention. Both plaintiffs testified Mrs. Trahan did not have a maid prior to the accident and did require one for several months thereafter because of her injuries and resultant incapacity; they employed a domestic named Lena Demand, paying her in cash as she requested; and they identified hand written receipts signed “Lena Demand” and totaling $375. The receipts were offered in evidence. Lena Demand was not offered as a witness because, as plaintiffs also testified, her whereabouts were unknown to them. This constitutes sufficient proof of payments made for maid services necessitated by the accident.
We are of the opinion that appellants’ contention relative to medical bills is meritorious only to the extent that the same has reference to such expenses incurred subsequent to April 24, 1967 when the alleged flareup occurred. As we have decided there can be no award for the alleged flareup because of insufficient proof that it *515 resulted from the accident, the amount of medical expenses incurred subsequent to April 24, 1967, $136, must be deducted from the award to Mr. Trahan.
We find no merit in appellants’ last contention relative to an error in the trial court’s computation of its award to Mr. Trahan. It is true that the various items of special damages amounts to $100 less than his total award of $2,584.59. But the award was made only in that total figure without itemization and it was made to Mr. Trahan in both his individual capacity and as head and master of the community o.f acquets and gains. As the only award which could have been made to him individually is for his pain and suffering, we are satisfied that the total amount awarded to him in his dual capacity included $100 for the injury he sustained in the accident. While his injury was minimal, so is the $100 award to which he is clearly entitled.
For the reasons assigned, the judgment ■appealed from is amended so as to reduce the award to the plaintiff, Mrs. Preston Trahan, from the sum of $8,000 to the sum of $4,000 and to reduce the award to the plaintiff, Preston Trahan, individually and as head and master of the community of acquets and gains existing between him and Mrs. Preston Trahan, from the sum of $2,584.59 to the sum of $2,448.59. As thus amended, and in all other respects, the judgment appealed from is affirmed; plaintiffs-appellees to pay the costs in this court.
Amended and affirmed.