CARTER, Judge.
This is an appeal from a trial court judgment in a suit for reimbursement against the Louisiana Worker’s Compensation Second Injury Board (Board).
FACTS
On March 11, 1986, U.S. Fire Insurance Company (U.S. Fire) was the worker’s compensation insurer of Clyde J. Monceaux, Sr. On that date, Monceaux, who was self-employed as the sole proprietor of a one-person trucking business, was engaged in the course and scope of his employment as a truck driver. While loading logs, Mon-ceaux lost his footing and fell, injuring his back and neck.
Monceaux was unable to return to work as a truck driver and made a claim to U.S. Fire for worker’s compensation and medical benefits. Since the accident was work-related, the insurer paid Monceaux’s claim.
Monceaux had previously sustained a work-related accident on October 19, 1979. As a result of that accident, Monceaux had suffered a back injury which required several surgical procedures, including a spinal fusion.
Following Monceaux’s second injury, U.S. Fire filed a claim with the Board, requesting reimbursement of the worker’s compensation and medical benefits paid because of Monceaux’s second injury. The Board rejected the insurer’s demand. In denying the claim, the Board determined that U.S. Fire had not shown that Mon-ceaux had a preexisting disability, that Monceaux’s employer had knowledge of the employee’s preexisting permanent, partial disability, or that the first injury merged with the second injury, entitling U.S. Fire to reimbursement.
Thereafter, U.S. Fire appealed to the district court pursuant to LSA-R.S. 23:1378 E. Pursuant to stipulation of the parties, the case was submitted to the trial court on briefs. At trial, the Board argued that the second injury fund had not been created to reimburse an insurer for worker’s compensation and medical benefits paid to or on behalf of a self-employed worker. U.S. Fire contended that all requirements of LSA-R.S. 23:1371 et seq. had been met and that, as Monceaux’s worker’s compensation insurer, it was entitled to the requested relief. U.S. Fire specifically argued that the fact that the employee for whom benefits had been paid was self-employed was irrelevant to a determination of entitlement to reimbursement from the fund.
After a hearing, the trial court, in denying U.S. Fire reimbursement, determined that the purpose of the Worker’s Compensation Act would not be furthered by allowing the insurer of a self-employed worker to be reimbursed for the benefits it paid to the self-employed worker. The court then determined that it was unnecessary to decide whether Monceaux’s second injury merged with his previous disability to cause a greater disability. From this adverse judgment, U.S. Fire appeals, assigning as error the trial court’s ruling that U.S. Fire was not entitled to relief from the second injury fund because its insured worker was self-employed.
REIMBURSEMENT FOR BENEFITS PAID TO SELF-EMPLOYED WORKERS
LSA-R.S. 23:1371 et seq. provides for the creation of the Louisiana Worker’s Compensation Second Injury Fund. In Employers National Insurance Company v. Louisiana Worker’s Compensation Second Injury Board, 533 So.2d 152, 153 (La.App. 1st Cir.1988), this court noted that:
The Second Injury Fund was formed to encourage continued employment of injured workers and the employment of physically handicapped workers by protecting employers from excess liability for worker’s compensation and medical benefits. The fund applies to the employer of any employee who has suffered a permanent partial physical impairment due to a previous accident or disease, is *1312 subsequently reinjured on the job, and suffers a greater degree of impairment than would have resulted from the subsequent injury alone, because the second injury merges with the first injury. In such cases, the employer receives a subsidy from the fund based on the type of benefit paid, [footnote omitted].
The determination of the liability of the fund is provided in LSA-R.S. 23:1378, which sets forth the various worker’s compensation and medical benefits for which reimbursement can be made. However, in the instant case, the issue presented is whether the second injury fund provides reimbursement when a physically handicapped worker who has a permanent, partial disability is self-employed. In other words, does the fact that an injured worker is “self-employed” preclude coverage under the statute for the employer or his insurer?
The worker’s compensation provisions are part of the social legislation enacted for the joint benefit of labor and management. Atchison v. May, 201 La. 1003, 10 So.2d 785, 788 (1942). These provisions must be given a liberal interpretation to effectuate the beneficial purpose of relieving the workers of the crushing economic burden of work-related injuries by diffusing the cost in the channels of commerce. Danielsen v. Security Van Lines, Inc., 245 La. 450, 158 So.2d 609, 611 (1963).
Unfortunately, the statute does not specifically address self-employed workers. In fact, there is no distinction anywhere in the statute excluding, limiting, or otherwise qualifying the eligibility of employers or insurers of self-employed workers from recovery from the second injury fund. Although this issue appears to be res nova, we find the following jurisprudence helpful.
In Louisiana Insurance Guaranty Association v. State Worker’s Compensation Second Injury Board, 552 So.2d 805, 806-807 (La.App. 1st Cir.1989), writ denied, 558 So.2d 1127 (La.1990), the issue presented was whether LIGA was entitled to reimbursement from the second injury fund. Under LSA-R.S. 22:1382(l)(b), LIGA was deemed the insurer as to the duties and obligations of the insolvent insurer as to the covered claims. See Harris v. Lee, 387 So.2d 1145, 1146 (La.1980); Billeaudeau v. Lemoine, 386 So.2d 1359, 1361 (La.1980); Hickerson v. Protective National Insurance Company of Omaha, 383 So.2d 377, 379 (La.1980). The court then determined that it logically followed that LIGA also should be deemed the insurer to the extent of the insolvent insurer’s rights on the covered claim. The court concluded that one of those rights to which LIGA was entitled was the right to reimbursement for a second injury claim.
Moreover, in National Union Fire Insurance Company v. Louisiana Workers’ Compensation Second Injury Board, 535 So.2d 474, 477 (La.App. 1st Cir.1988), this court, in addressing the issue of whether an insurer was entitled to reimbursement under the statute for a compromised claim, pointed out that no distinction was made between certain claims. This court stated:
Under this statute, reimbursement can be made for payments of supplemental earnings, permanent partial, permanent total or death benefits. If reimbursement is made for any one of these, the claimant can also get reimbursement for medical expenses. Although the statute does not specifically provide for reimbursement of compromised claims, it makes no distinction between compromised and uncompromised claims, and we perceive no valid reason to make such a distinction. The public policy behind allowing reimbursement for second injury claims is to encourage employment of handicapped workers. W. Malone and H. Johnson, Workers’ Compensation Law and Practice, 13 Louisiana Civil Law Treatise § 234, pp. 498-507 (2nd ed. 1980). That public policy is served by allowing payment for compromised (as well as uncompromised) reimbursable claims. Further, it has long been the public policy of this state that the compromise of disputes are highly favored. St. Romain v. Lambert, 521 So.2d 618 (La.App. 1st Cir.), writ denied, 523 So.2d 233 (La.1988). For these reasons, and for the reasons set forth in Parish *1313 Government Risk Management Agency v. La. Workmen’s Compensation Second Injury Board, 524 So.2d 267 (La.App. 5th Cir.1988) and Town of Homer v. Louisiana Workers’ Compensation Second Injury Board, 510 So.2d 419 (La.App. 2nd Cir.1987), the fact that an otherwise reimbursable claim is compromised does not preclude its payment by the Board.
See also RADA v. Administrator, Division of Employment Security, State, Department of Labor, 319 So.2d 460 (La.App. 4th Cir.), writ denied, 323 So.2d 128 (La.1975).
' In the instant case, we find that it would defeat the purpose of the second injury fund to deny this employer reimbursement. Following the rationale of National Union Fire Insurance Company v. Louisiana Workers’ Compensation Second Injury Board, 535 So.2d at 477, we find the fact that a claim for reimbursement was made by the insurer of a self-employed worker does not preclude reimbursement from the fund. If the legislature intended to exclude self-employed workers or their insurers from coverage under the second injury fund, it could have easily expressed such an exclusion in the statute. However, self-employed workers or their insurers are not excluded or limited by the statute. The statute does not make a distinction between claims paid to self-employed workers and claims paid to other workers, and we perceive no valid reason to do so. Therefore, we find that the legislature intended to include, within those entitled to reimbursement, all employers of self-employed workers and their insurers who make an otherwise reimbursable claim. To deny reimbursement of the worker’s compensation and medical benefits paid to a self-employed worker would be violative of the very purpose of the statute. Clearly, a valid legislative purpose for including self-employed individuals within the protection of the statute exists in that it enables individuals who have been injured to return to work and become productive members of society.
CONCLUSION
For the above reasons, the judgment of the trial court finding that U.S. Fire is not entitled to reimbursement from the Board for the worker’s compensation and medical benefits paid to a self-employed worker is reversed. The case was submitted on briefs, and the record contains no evidence or information which will allow us to make a determination as to whether the first injury merged with the second injury so as to entitle U.S. Fire to reimbursement and to what amount, if any, U.S. Fire may be entitled. Therefore, we will remand the case to the trial court for further proceedings consistent with this opinion. The Board is cast for costs of this appeal in the amount of $227.35. All other costs are to await final decision in this matter.
REVERSED AND REMANDED.